# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

RAY HANNAH,

        Plaintiff,

v.                                          No. Civ. 16-435 JCH/SCY

SANDIA CORPORATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On March 17, 2017, Defendant Sandia Corporation ("Defendant" or "Sandia") filed a Motion for Summary Judgment (ECF No. 43). The Court, having considered the briefs, evidence, applicable law, and otherwise being fully advised, concludes that Defendant's motion should be granted and this case dismissed.

## I.    FACTUAL BACKGROUND

Prior to his termination, Plaintiff Ray Hannah worked for Sandia for 14 years without any prior discipline. Pl.'s Undisputed Fact ("UF") ¶ 28, ECF No. 53. Mr. Hannah was over 40 years old during the time Sandia employed him. Def.'s UF ¶ 1, ECF No. 43. He worked in a department that required a security clearance. *See* Dep. of Sara Selan 51:10-22, ECF No. 53-11.

### A.  Conflict with Brian Brane

Starting around 2012, one of Mr. Hannah's co-workers, Brian Brane, began harassing him about his age and work performance. Aff. of Ray Hannah ¶ 13, ECF No. 53-1. Nearly every day Brian Brane would say something about what Mr. Hannah was or was not doing. Dep. of Ray Hannah 49:16-24, ECF No. 43-1; *id.* 40:17-19, ECF No. 53-6. Over a couple years, Mr.

Brane specifically mentioned Mr. Hannah's age at least three or four times. *Id.* 47:6-9, ECF No. 53-6. In one instance, after Brian Brane checked some parts Mr. Hannah had inspected, he told the engineer that he found some faulty parts, that Mr. Hannah did not know what he was doing, that Mr. Hannah should not be allowed to inspect, and that he was too old. *Id.* 40:3-13. Another time, when some co-workers were going to play basketball at lunch, one of the guys asked Mr. Hannah if he would play, to which Mr. Hannah said, "No. That's for young guys." *Id.* 47:12-48:2. Brian Brane responded, "Ah, he's too old, he couldn't even do it, he couldn't even walk over to the court." *Id.* 48:5-8. On another occasion when Mr. Brane was training someone, Mr. Brane said, "Ray takes forever, he has to sit down and do the job because he's so old." *Id.* 48:12-15. Mr. Hannah never heard anyone else at Sandia say anything about his age. *Id.* 45:15-19.

Brian Brane was also unpleasant, bossy, and nosy with other co-workers, including an older worker named Julian. *See* Dep. of Toni Pifer 10:9-11:21, 27:4-28:1, ECF No. 53-7; Dep. of Ray Hannah 58:4-59:21, ECF No. 53-6. Mr. Brane was particularly terrible to Mr. Hannah, causing him trouble, such as hiding parts so Mr. Hannah had difficulty finding them to make him look bad. *See* Dep. of Toni Pifer 11:25-16:8, ECF No. 53-7. Mr. Brane would also talk poorly about Mr. Hannah to engineers and supervisors. *See id.*

The approximately three times Mr. Brane made a comment to Mr. Hannah about his age, Mr. Hannah reported it to his immediate supervisor, James Lucero. *See* Dep. of Ray Hannah 49:19-50:22, ECF No. 43-1; Aff. of Ray Hannah ¶ 3, ECF No. 53-1. Mr. Hannah said he did not appreciate Brian Brane talking about how old he was and complaining about his age, particularly when Brian would discuss his age with other people. Dep. of Ray Hannah 50:17-51:5, ECF No. 43-1. James Lucero kept assuring Mr. Hannah he would do something about it, but he never did. Aff. of Ray Hannah ¶ 13, ECF No. 53-1; Dep. of Ray Hannah 51:9-19, ECF No. 53-6.

As a result of an inspection issue about which Mr. Brane complained, Mr. Hannah had lost his qualification to inspect parts. *See* Dep. of Ray Hannah 39:20-40:22, ECF No. 53-6; Pl.'s Ex. 6, ECF No. 53-8 at 1 of 5. In May 2013, Ray Hannah met with his Union Steward, Debbie LaPierre, to set up a meeting with Mr. Lucero and Human Resources ("HR") about his conflicts with Brian Brane and their failure to retrain or re-qualify him to do parts inspections. *See* Pl.'s Ex. 6, ECF No. 53-8 at 1 of 5. She offered to file a grievance on his behalf claiming discrimination and hostile work environment, but Mr. Hannah wanted her to wait to give Mr. Lucero time to act on the personnel issues. Pl.'s Ex. 6, ECF No. 53-8 at 1 of 5; Dep. of Deborah LaPierre 27:18-28:6, 49:17-51:10, ECF No. 53-2. During a June 2013 meeting between James Lucero, Mr. Hannah, and Ms. LaPierre, Mr. Lucero stated that Muhammad El, Mr. Hannah's manager, and engineer Ryan Haggerty wanted to fire Mr. Hannah, but Mr. Lucero told them Mr. Hannah had done nothing wrong. Pl.'s Ex. 6, ECF No. 53-8 at 1-2 of 5. Mr. Lucero said he was happy they were going to HR because it might alleviate some of the pressure he felt from Mr. El and Mr. Haggerty. *Id.* Ray Hannah and Debbie LaPierre attempted three times to set up a meeting with Muhammad El, but he cancelled each meeting without explanation. Aff. of Ray Hannah ¶ 15, ECF No. 53-1.

On June 20, 2013, Mr. Hannah and Ms. LaPierre met with Matt Montanes in HR to complain about Mr. Hannah's ongoing problems with Brian Brane, and Mr. Hannah reported it could be because of his age. *See* Dep. of Ray Hannah 60:2-61:17, ECF No. 53-6; Dep. of Deborah LaPierre 53:13-54:10, ECF No. 53-2; Pl.'s Ex. 6, ECF No. 53-8. Mr. Montanes said he would talk to James Lucero and Muhammad El, and he wanted until August to get things moving in the right direction. Pl.'s Ex. 6, ECF No. 53-8 at 2 of 5. However, he never spoke to either supervisor or escalated the matter to an investigation. Dep. of Matt Montanes 23:15-25, 26:2-8,

ECF No. 53-9. Sandia's policy on a harassment-free workplace required Matt Montanes to report allegations of discrimination to the EEO group or ethics group for investigation. Dep. of Sara Selan 65:24-71:19, ECF No. 53-11. He nonetheless did not do so. *See* Dep. of Matt Montanes 23:2-25, ECF No. 53-9. On October 31, 2013, Mr. Hannah and Ms. LaPierre met again with Mr. Montanes and Keith Singer from HR during which Mr. Hannah "briefed Keith on what has been going on with inspection and his engineer, Ryan Haggerty." Pl.'s Ex. 6, ECF No. 53-8 at 3 of 5.

### B. Jury Duty

Mr. Hannah was called for jury duty for a three-week period beginning May 5, 2014. Aff. of Ray Hannah ¶ 3, ECF No. 53-1. He spoke to James Lucero before it started, and Mr. Lucero told Mr. Hannah that he cleared his calendar of assignments for the three-week period. *Id.* Mr. Hannah replied that he had hurt his back some weeks prior and asked if he had jury duty for part of a day, would he need to report to work for a few hours or just go home. *Id.* Mr. Lucero responded that he should use his discretion and at the end of the jury duty period they would have the opportunity to go through records and straighten out his time. *Id.* Sandia had a policy that allowed for a 30-day period to correct time cards. *Id.* ¶¶ 5, 10.

On May 15, 2014, Mr. Hannah left a voicemail message for Mr. Lucero, stating that he was required to report to jury duty on May 16, 2014. *See* Def.'s UF ¶ 2, ECF No. 43; Voicemail dated May 15, 2014, ECF No. 44. Mr. Hannah did not report to work on May 16, 2014, and he charged his time to jury service, receiving full pay for that day. Decl. of James Lucero ¶ 8, ECF No. 43-1; Report of Investigation, ECF No. 43-2 at 8, 16 of 25. Mr. Hannah did not serve on jury duty on May 16, 2014. Report of Investigation, ECF No. 43-2 at 8-14 of 25. Mr. Hannah was experiencing back pain, but he did not have adequate sick leave, so he decided to report to Mr. Lucero that he was out on jury duty, with the intention of later correcting which days he was out

for back pain and which days he reported for jury duty. Aff. of Ray Hannah ¶¶ 5-6, ECF No. 53-1. By the time he would meet to correct the timesheets, Mr. Hannah would have accumulated an additional ten hours of sick leave that he could have used. *Id.* ¶ 6.

On May 16, 2014, Mr. Lucero learned from another employee that jurors were not required to report to work on Friday, so he reported his concerns, along with Mr. Hannah's voicemail message, to Keith Singer, who in turn referred the matter to Sandia Corporate Investigations. *See* Decl. of James Lucero ¶ 9, ECF No. 43-1; Report of Investigation, ECF No. 43-2 at 8 of 25. Sarah Renfro conducted the investigation on behalf of Sandia. Dep. of Sarah Renfro 12:8-20, ECF No. 43-2.

On May 18, 2014, Mr. Hannah left another voicemail message for Mr. Lucero, stating that he "got on a trial, on a jury on Friday and we have to report again Monday, tomorrow at 8:30" so he might possibly be on it a day or two or all week. Decl. of James Lucero ¶¶ 9-10, ECF No. 43-1; Voicemail dated May 18, 2014, ECF No. 44. On Monday, May 19, 2014, Mr. Hannah reported for jury selection and was there all day. *See* Report of Investigation, ECF No. 43-2 at 8, 14 of 25; Aff. of Ray Hannah ¶ 7, ECF No. 53-1. Mr. Hannah was not chosen as a juror for the trial. Aff. of Ray Hannah ¶ 7, ECF No. 53-1. A court administrator told him he should call in the following day before 11:30 a.m. to see if he would be called in to report at 1 p.m. *Id.* On May 19, 2014, Mr. Hannah left another voicemail for Mr. Lucero telling him he had to go to that trial again tomorrow, it may last to Thursday or Friday, and he would be needed for "two more days at least." Voicemail dated May 19, 2014, ECF No. 44; Decl. of James Lucero ¶¶ 11-12, ECF No. 43-1.

Mr. Hannah did not report to work on the morning of Tuesday, May 20, 2014. Report of Investigation, ECF No. 43-2 at 8-9 of 25; Aff. of Ray Hannah ¶ 8, ECF No. 53-1. Ms. Renfro

contacted the courthouse and a representative told her Mr. Hannah was not at the courthouse, so she and another investigator went to Mr. Hannah's home to see if he was there. Report of Investigation, ECF No. 43-2 at 8-9 of 25. Mr. Hannah was home and experiencing back pain. Aff. of Ray Hannah ¶ 8, ECF No. 53-1. Ms. Renfro asked why he was not at work, to which Mr. Hannah responded that he was in bed because of his back and was waiting to call in to see if he was needed to report for jury service at 1 p.m. *Id.*

Mr. Hannah returned to work later that day and asked James Lucero what was going on. *Id.* ¶ 9. Mr. Hannah informed Mr. Lucero that he was planning to meet with him to straighten out the time at the end of jury service, as he had suggested, and asked if they could do that now. *Id.* Mr. Lucero replied that, because he was under investigation, he was not allowed to fix his time card. *Id.* He also falsely told Mr. Hannah that an anonymous caller had reported that he was not at jury duty, even though Mr. Lucero himself had reported him for investigation. *See id.* Mr. Hannah did not serve on a jury trial on May 20, 2014. *See id.* ¶¶ 8-9; Report of Investigation, ECF No. 43-2 at 14 of 25.

Mr. Hannah met with Ms. Renfro the next day. Aff. of Ray Hannah ¶ 11, ECF No. 53-1. During that meeting, Mr. Hannah said he was sorry about lying to Mr. Lucero and again told her about his back pain. *Id.* In her investigative report, Ms. Renfro concluded that Mr. Hannah violated Sandia policies by mischarging his time and lying to his supervisor. Def.'s UF ¶ 14, ECF No. 43.

Mr. Hannah admits that the voicemails he left for Mr. Lucero were not truthful and that he admitted that in the investigation. Dep. of Ray Hannah 102:12-20, ECF No. 43-1. Mr. Hannah also admits that the untruthful voicemails he left for his supervisor violated Sandia's policy to Act with Integrity. *Id.* 116:8-13. Before Sandia made its decision, however, Mr. Hannah repaid

Sandia for the time on his time card that he incorrectly reported as time spent at jury duty. Aff. of Ray Hannah ¶ 10, ECF No. 53-1.

When considering cases of serious potential dispute, including termination of employment, Sandia convenes a "Corporate Review Committee," or "CRC," to determine discipline. Def.'s UF ¶ 15, ECF No. 43. The CRC is composed of three Sandia executives: (1) the Director of HR, who chairs the CRC, (2) a "line" director in the employee's organization, and (3) a "pool" director who serves as a neutral third party. *Id.* Sandia maintains a disciplinary database, and as part of the CRC process, the disciplinary process is queried using broad categories of misconduct going back five years, and then a list of the most similar cases is created for CRC to review (the "Comparative Discipline" list). Dep. of Sara Selan 21:1-9, ECF No. 43-2. As part of the CRC process, the employee has an opportunity to submit a written statement for the CRC decision-makers to consider. *See* Dep. of Ray Hannah 106:19-107:17, ECF No. 43-1, and Ex. B-2, ECF No. 43-1 at 12 of 12.

Muhammad El initiated the CRC process for Ray Hannah to review potential violations of corporate policies and procedures for knowingly falsely representing charged time away from work as having been on jury duty when he was not, for a total of 35.5 hours of mischarged time between May 5 and May 20, 2014. *See* Pl.'s Ex. 10, ECF No. 53-12 at 1 of 2. Keith Singer scheduled the CRC. *See* Pl.'s Ex. 11, ECF No. 53-13. Mr. Hannah submitted a written statement to the CRC. Dep. of Ray Hannah 106:19-107:23, ECF No. 43-1, and Ex. B-2, ECF No. 43-1 at 12 of 12. His statement was on a form that requested he describe "the incident." Ex. B-2, ECF No. 43-1 at 12 of 12. Because the form indicated it was limited to "the incident," Mr. Hannah did not report any harassment or retaliation as part of his written statement to the CRC. *See* Aff. of Ray Hannah ¶ 16, ECF No. 53-1. Nor did he express his purported intention of later correcting

within 30 days which days he was out for back pain and which days he reported for jury duty. *See* Def.'s Ex. B-2, ECF No. 43-1 at 12 of 12.

In Mr. Hannah's case, to prepare the Comparative Discipline Report, Sandia ran a query for falsified time records, deception/lack of cooperation for a period of five years. Dep. of Sara Selan 22:11-17, ECF No. 43-2; Comparative Discipline Report, ECF No. 53-4. The Comparative Discipline Report presented to the CRC listed seven "Comparables" that included information on the employee's position, date of the incident, date of hire, violation, and resulting discipline:

#1 – OAA – 10/18/2012 (DOH – 6/1/2004) -- Employee charged 2 work weeks to project and task when on vacation. **6 day suspension without pay, repayment of hours not worked, no off-site work.**

#7 – ASA – 6/27/2011 (DOH – 10/10/1994) -- Employee failed to work hours as documented on time sheet; 130 hours and 15 minutes of mischarged time. CI substantiated 130 hours and 15 minutes of mis-charged time. **7 day suspension without pay; repayment of hours not worked; work time monitored for 6 months.**

#8 – Purchasing Support – 3/28/2013 (DOH – 5/30/1997) - Employee falsely represented time by coming in late, leaving early and failing to document these events accurately on timecard. **3 day suspension without pay; repayment of hours not worked, work time monitored.**

#9 – Technologist – 5/9/2011 (DOH – 3/27/2000) – CI substantiated "failure to work hours documented on timesheet -- 20.5 hours mischarged. Also greater than incidental use of telephone and web, and interpersonal issues with peers. **5 day suspension without pay; repayment of wages for 20.5 hours; work time monitored for 6 months.**

#14 – Tech Staff – 8/20/2010 (DOH – 11/11/2002) -- Employee negligently recorded time, 75 hours & 24 minutes. Charged to P/T time that should have been coded as Flex, Vac, Ill or other. **Written reprimand, removal of accrued Flex time.**

#17 – Custodian – 3/7/2013 (DOH – 9/9/2002) -- Employee falsely represented time away as having served on jury duty when not. Was disrespectful to supervisor when being questioned about time away. **10 day suspension without pay.**

#18 – Technologist – 2/25/2010 (DOH – 7/27/1998) -- Employee knowingly

mischarged 173 hours on his timecard to a project/task rather than appropriately charging to ILL, Vacation or Vacation Buy. **Employee resigned in lieu of termination.**

Comparative Discipline Report, ECF No. 53-4 (emphasis in original). *See* Dep. of Sara Selan 21:1-23:12, ECF No. 43-2. Employee #9 worked in the same department as Ray Hannah and would have had a security clearance. Def.'s Resp. to Request for Admission ¶ 10, ECF No. 53-3; Dep. of Sara Selan 51:10-22, ECF No. 53-11.

The CRC decided to terminate Mr. Hannah's employment, effective July 29, 2014, based on the investigative findings. Def.'s UF ¶ 20, ECF No. 43. Mr. Hannah worked for approximately ten weeks following the incident before Sandia terminated his employment. Aff. of Ray Hannah ¶ 12, ECF No. 53-1. During that time, he worked in the same classified area as before the incident without any additional restrictions. *Id.* After Sandia terminated him, another employee falsely reported that he was sick, when in fact he was at a motorcycle rally. Dep. of Sara Selan 48:25-51:4, ECF No. 53-11. That employee was terminated, but prior to arbitration, the case settled for an eight-month suspension without pay. *Id.*

Following his termination, on or around July 2014, the Metal Trades Council ("MTC") filed a union grievance on behalf of Ray Hannah, challenging his termination. Decl. of Jeffrey Chang ¶ 4, ECF No. 43-2. On January 27, 2015, in response to the union's request for information, Sandia provided the ages of the employees listed in the Comparative Discipline Report. *See* Letter dated January 27, 2015, ECF No. 53-5. All of the employees were younger than Mr. Hannah. Def.'s Resp. to Request for Admission ¶ 8, ECF No. 53-3.

On October 24, 2014, Ray Hannah filed a charge of discrimination on the basis of age and retaliation. *See* Determination of Probable Cause, ECF No. 53-14 at 2 of 11. In May 2015, the New Mexico Human Rights Department issued a Determination of Probable Cause. *See id.* at

1-5 of 11. The EEOC subsequently issued an Amended Determination finding that Ray Hannah was not treated fairly in terms of discipline and the disparate treatment was based on his age. Amended Determination, ECF No. 53-14 at 10-11 of 11.

In late May 2015, the parties reached a settlement of the union grievance, signed by Jeffrey Chang, Sandia's Employee & Labor Relations Manager, and Bill Sena, the President of the MTC, and initialed by Mr. Hannah. *See* Settlement Agreement, ECF No. 43-2 at 22 of 25; Decl. of Jeffrey Chang ¶¶ 3-5, ECF No. 43-2. In the settlement, Sandia agreed to convert Mr. Hannah's termination to a disciplinary suspension without pay through March 7, 2015, and Mr. Hannah agreed to voluntarily terminate his employment on March 8, 2015. Settlement Agreement, ECF No. 43-2 at 22 of 25. Sandia additional agreed to pay Mr. Hannah $5,000, and the Council would withdraw its grievance. *Id.* The agreement expressly stated it "is intended only as settlement and total resolution of the specific issue in the above mentioned grievance." *Id.* The purpose of the language was to make sure the settlement did not prevent Mr. Hannah from filing any other charges. Dep. of Deborah LaPierre 62:2-63:17, ECF No. 53-2; Def.'s Resp. to Pl.'s First Set of Requests for Admission ¶ 14, ECF No. 53-3.

By allowing Mr. Hannah to voluntarily terminate his employment on March 8, 2015, Mr. Hannah became eligible for certain retirement benefits, including a Service Pension. Decl. of Jeffrey Chang ¶ 7, ECF No. 43-2. Mr. Hannah accepted the lump sum payment and retirement benefits, including the pension, and has never paid them back. *Id.* ¶ 10. Had Mr. Hannah retired at age 66, however, he would have earned $180 a month more in his pension and $185 a month more in social security payments. *See* Aff. of Ray Hannah ¶ 17, ECF No. 53-1.

## II.     STANDARD

On a motion for summary judgment, the moving party initially bears the burden of

showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotations omitted). Under Rule 56(c), only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

### III. ANALYSIS

#### A. ADEA

Under the ADEA it is illegal for an employer to discharge or otherwise discriminate against any individual who is at least 40 years of age "because of such individual's age." 29 U.S.C. § 623(a)(1) and § 631(a). Unlike under Title VII, the ADEA does not authorize a mixed-motive age discrimination claim. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 174-75 (2009). The Supreme Court interpreted "because of" to mean that age must be "the 'reason' that the employer decided to act." *Id.* at 176. The Supreme Court therefore held that for a plaintiff to succeed on an ADEA claim, he must prove by a preponderance of the evidence (which may be direct or circumstantial) that his age was the "but-for" cause of the adverse action. *Id.* at 176-78. "The burden of persuasion does not shift to the employer to show that it would have taken the

action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180. A plaintiff does not have to prove that age was the sole motivating factor or that the reasons offered by the defendant are false "if he proves that age was also a reason, and that age was the factor that made a difference." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010).

An employee claiming disparate treatment under the ADEA may survive summary judgment by providing circumstantial rather than direct evidence of discrimination as set forth in *McDonnell Douglas. See Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1278 (10th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To make a prima facie case of age discrimination, Plaintiff must prove (1) he is over 40 years old; (2) he suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). Although *McDonnell Douglas* shifts the burden of production, throughout the process the burden of persuasion remains with the plaintiff to show that the defendant discriminated on an illegal basis. *Jones*, 617 F.3d at 1278.

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action. *Crowe v. ADT Sec. Services, Inc.*, 649 F.3d 1189, 1194-95 (10th Cir. 2011); *Wilkerson*, 606 F.3d at 1266. If the defendant meets his burden, the burden of production returns to the plaintiff to show that the defendant's proffered rationale is pretextual, or that age was a determinative factor in the employment decision. *See Crowe*, 649 F.3d at 1195; *Wilkerson*, 606 F.3d at 1266.

Pretext can be shown through evidence of weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons that a reasonable jury could rationally find

to be unworthy of credence; through direct evidence that the proffered reason is false; through evidence that the employer acted contrary to a policy or practice when making the adverse employment decision; or through evidence that plaintiff was treated differently from similarly-situated employees. *See Crowe*, 649 F.3d at 1196; *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). The court does "not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007). Although the court must construe all facts favorably to Plaintiff, in evaluating pretext arguments, the court must consider the facts as they appeared to decision-makers. *Bennett*, 792 F.3d at 1268. To survive summary judgment, Plaintiff must come forward with evidence that would persuade a reasonable jury that Defendant's proffered reason was merely pretext for age discrimination. *See Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1143–44 (10th Cir. 2009). "Consequently, once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." *Jones*, 617 F.3d at 1280 (internal quotation omitted).

It is undisputed that the first element of the prima facie case is met: Mr. Hannah is over 40 years old and a member of a protected class. Defendant argues that Mr. Hannah's termination was converted to a voluntary resignation as part the settlement agreement for his union grievance, and thus, does not amount to an adverse action. Defendant also asserts that there is no evidence that the challenged action occurred under circumstances giving rise to an inference of discrimination.

Adverse employment actions include acts that constitute "a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)). The Tenth Circuit liberally interprets the adverse action prong, and courts must examine the unique factors relevant to each case. *Id.* "Actions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn." *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998). Although the parties negotiated the grievance to more favorable terms for Plaintiff, the settlement agreement contained a disciplinary suspension without pay through March 7, 2015, and a voluntary termination on March 8, 2015, which resulted in reduced pension benefits. This evidence is sufficient to satisfy the adverse-employment-action prong.

Ordinarily a plaintiff can satisfy the third element of the prima facie test by showing that the employer treated similarly situated employees more favorably, but courts must be sensitive to the myriad ways that a plaintiff may prove the inference. *Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). "A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant—i.e., that the employees were similarly situated." *Id.* at 1182. *See also Turner*, 563 F.3d at 1147 (stating that statistical evidence must be closely related to issues in case by showing disparate treatment between comparable individuals).

Plaintiff argues that Sandia's decision to terminate him was based on his age because it imposed lesser discipline against younger employees who engaged in similar or more serious infractions. Plaintiff bases his pretext argument on the same evidence he uses to support the third

prong of the prima facie test. The prima facie burden is not onerous, and because the Court determines this motion can be decided on the pretext issue, the Court will proceed to the next steps in the *McDonnell Douglas* analysis. *See Bolton v. Sprint/United Management Co.*, 220 F. App'x 761, 767-70 (10th Cir. Mar. 6, 2007) (unpublished) (assuming for purpose of appeal that plaintiff met non-onerous prima facie burden and determining that none of evidence created genuine issue of material fact that defendant's reason for terminating plaintiff's employment was pretextual).

In this case, it is undisputed that Plaintiff left voicemails to his supervisor in which he lied about having to serve on a jury trial. It is also undisputed that he knowingly falsely represented charged time away from work as having been on jury duty when he was not, for a total of 35.5 hours of mischarged time between May 5 and May 20, 2014. Defendant has therefore met its burden of production that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Plaintiff asserts that the Comparative Discipline Report meets his burden of showing Sandia gave lesser discipline to younger employees who engaged in similar serious infractions. Plaintiff, however, has not shown that the employees listed in the report have the same supervisors or are subject to the same standards governing performance evaluation and discipline. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) ("Individuals are considered similarly-situated when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of comparable seriousness.") (internal quotations omitted); *Kendrick*, 220 F.3d at 1233 ("Different supervisors will inevitably react differently to employee insubordination."). Additionally, Plaintiff has provided no evidence as to who made the disciplinary decisions for any of the

employees in the Comparative Discipline Report.

For example, it is undisputed that Plaintiff works in a department that required a security clearance. Plaintiff has not shown that he is governed by similar performance evaluations and discipline as employees in unsecured areas to meet his burden to show employees in secured and unsecured areas are similarly situated. Of the seven employees listed, Plaintiff has provided evidence that only one of them, Employee #9, worked in an area requiring a security clearance. Employee #9 mischarged 20.5 hours of time by failing to work hours documented on the timesheet, but only received a five-day suspension without pay and his or her work time was monitored for six months. Plaintiff, however, has not shown that the circumstances were similar to his case. Unlike other entries, the report does not indicate that Employee #9 "falsely" or knowingly" mischarged time. Consequently, Plaintiff has not shown that Employee #9 engaged in the same knowing falsity and deliberate lies in which Plaintiff undisputedly engaged when he left multiple voicemails lying to his supervisor.

For all the foregoing reasons, Plaintiff has not shown that any of the employees listed in the Comparative Discipline report were similarly situated to Plaintiff for purposes of the Court's ADEA analysis. *Cf. Watts v. City of Norman*, 270 F.3d 1288, 1296 (10th Cir. 2001) (employees were not similarly situated when there was "corroborating evidence in [one] case and the absence of such evidence in [the other]"); *Doke v. PPG Industries, Inc.*, 118 F. App'x 366, 369 (10th Cir. Nov. 24, 2004) (holding that plaintiff did not show younger employees were similarly situated to plaintiff where management did not have comparable evidence of policy violations of other employees).[1]

---

[1] The Comparative Discipline report shows that one younger employee "knowingly" mischarged 173 hours on his timecard and resigned in lieu of termination. Additionally, the record shows that after Sandia terminated Ray Hannah, another employee falsely reported that he was sick and Sandia terminated his employment but settled for an eight-month suspension before arbitration. Although there is no evidence indicating that either of these employees

The evidence in the record, construed in Plaintiff's favor, is not sufficient to satisfy Plaintiff's burden to show Sandia gave lesser discipline to similarly situated younger employees who engaged in similar misconduct. Nor has Plaintiff produced other evidence to support the inference that the decision-makers on the CRC harbored any animus against him based on his age, or were even aware of his age. For the foregoing reasons, Plaintiff has not met his burden of showing sufficient evidence from which a jury might reasonably conclude that Sandia's conduct was the result of unlawful age discrimination rather than for the legitimate non-discriminatory disciplinary reason offered. The Court will therefore grant Defendant summary judgment on Count I of the Amended Complaint.

## B. ADEA Retaliation

To state a prima facie case of retaliation, the plaintiff must show (1) that she engaged in protected opposition to discrimination under the ADEA; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013); *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1278-79 (10th Cir. 2005). To satisfy the third element, a plaintiff must demonstrate that the person who took the adverse action against her knew of the employee's protected activity, or that the person allegedly harboring the discriminatory animus knew and used the person who effected the adverse action as the "cat's paw" to affect his own discriminatory designs. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007). Temporal proximity between protected activity and the adverse action may permit an inference of causation. *Hysten*, 296 F.3d at 1183-84.

After the plaintiff meets his burden to establish a prima facie case of retaliation, the

---

was similarly situated to Mr. Hannah, Mr. Hannah is not the only employee who Sandia initially decided to terminate for falsification of timecards.

burden shifts to the employer to identify a non-retaliatory reason for the termination of plaintiff's employment. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1116 (10th Cir. 2001); *Webb v. Level 3 Communications, LLC*, 167 F. App'x 725, 733 (10th Cir. Jan. 25, 2006). If the employer meets that burden, the plaintiff must then produce evidence that the discharge was pretext for the unlawful retaliation. *Webb*, 167 F. App'x at 733. When the employer vests employment decisions in an independent review committee, a court must focus its pretext assessment on the motive of the final decision-maker. *Macon v. United Parcel Service, Inc.*, 743 F.3d 708, 715 (10th Cir. 2014). An employer will not escape liability, however, if the seemingly neutral higher authority imposed discipline merely by relying on reports or conclusions of a biased supervisor, rather than conducting an independent investigation. *See id.*

Defendant asserts that the timeframe does not support an inference of retaliatory motive. Unless the adverse action is "*very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Id.* at 1184 (quoting *Anderson v. Coors Brewing Co.*, 181, F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original). The Tenth Circuit has concluded that a three-month lag, without additional evidence of causation, is not sufficiently close to permit an inference of causation. *See id.* Viewing the facts in Plaintiff's favor, he made approximately three to four reports of age discrimination by Mr. Brane to Mr. Lucero beginning in 2012 over a two-year period, and on June 20, 2013, he and Ms. LaPierre reported to Matt Montanes that the problems he was having with Mr. Brane could be because of age. Mr. Hannah and Ms. LaPierre had another meeting with Mr. Montanes and Mr. Singer in October 2013, but the record of that meeting does not indicate that age discrimination was discussed. *See* Pl.'s Ex. 6, ECF No. 53-8 at 3 of 5. Even assuming Mr. Hannah made age discrimination complaints in October 2013, he was not fired until July 2014.

His termination is not sufficiently closely connected in time to his protected activity to establish the causation requirement on its own. *Cf. id.*

Defendant also argues that Plaintiff cannot satisfy the causation requirement because the three decision-makers on the CRC had no knowledge of any complaints by Mr. Hannah about alleged age discrimination or harassment. Plaintiff disputes this fact, arguing it is not supported by the materials submitted. Indeed, Defendant did not attach affidavits from the decision-makers; rather, Sandia cites the letter from Muhammad El to Ray Hannah informing him of the CRC's conclusions and his termination. *See* Def.'s Mot. ¶ 21 (citing Letter dated July 28, 2014, ECF No. 43-1 at 10 of 12). In that letter, Mr. El noted that the CRC decision-makers "gave full consideration to the evidence of your actions, your personal written statement in which you admitted the above was true and the impact of your actions to Sandia." *Id.* Defendant also relies on Ms. Renfro's Report of Investigation, Mr. Hannah's personal written statement, and his deposition testimony in which he acknowledged that he did not inform the CRC in his written statement of his allegations concerning age discrimination. *See id.* (citing Dep. of Ray Hannah 107:21-23, ECF No. 43-1; Ex. B-2 and C-1).

Plaintiff, however, did not submit evidence to refute Defendant's assertion. Plaintiff has not given the Court affirmative evidence to demonstrate that the three decision-makers had knowledge that Mr. Hannah made complaints of age discrimination or harassment. Instead, Plaintiff argues that the Court may reasonably make the inference that the CRC knew of Mr. Hannah's complaints of age discrimination because (i) Mr. Hannah complained to Mr. Lucero about age discrimination by Mr. Brane; (ii) Mr. Lucero initiated the investigation into his time card falsity; (iii) Mr. El told Mr. Lucero that he wanted Mr. Hannah fired; (iv) Mr. El recommended the CRC terminate Mr. Hannah; and (v) Mr. Hannah reported his age

discrimination complaint to Mr. Montanes in HR. This evidence, however, does not permit a reasonable inference that the employees who were aware of Mr. Hannah's age-discrimination complaints reported that information to members of the CRC. Although Matt Montanes told Mr. Hannah and Ms. LaPierre in a June 20, 2013 meeting that he would get things moving in the right direction, Plaintiff asserts as a fact that Mr. Montanes never contacted Mr. Lucero or Mr. El or otherwise escalated the matter to an investigative body. *See* Pl.'s Resp. ¶ 37, ECF No. 53.

The summary judgment rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. Once Defendant showed the absence of evidence that the CRC members had knowledge of Mr. Hannah's complaint, the burden shifted to Plaintiff to come forward with evidence to support the fact. *See Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim"), *and id.* at 323 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Plaintiff has failed to meet his burden of production of coming forward with competent evidence from which a jury could infer that the decision-makers on the CRC knew that Plaintiff had complained about age discrimination to permit an inference of retaliatory motive. *Cf. Montes*, 497 F.3d at 1176-77 (affirming summary judgment for employer on retaliation claim because employee did not support her argument that employer's proffered reason for firing her was really subterfuge for retaliation with any competent evidence from which a jury could infer that information concerning employee's meeting with counsel was ever relayed to supervisor who fired her).

That conclusion does not end the inquiry, however, because Plaintiff could show that the CRC was merely a "rubber stamp" or "cat's paw" for a biased supervisor. Plaintiff has provided evidence indicating that Muhammed El said he wanted Plaintiff fired, and he drafted the recommendation to the CRC to fire Mr. Hannah. *See* Dep. of James Lucero 33:33-34:9, ECF No. 43-2. The record does not indicate, however, that Mr. Hannah, Ms. LaPierre, Mr. Lucero, or Mr. Montanes ever informed Mr. El about Mr. Hannah's age discrimination complaints. Nor does the record show that Mr. El knew that the meetings Mr. Hannah desired with him, which Mr. El cancelled, were for the purpose of discussing age discrimination. *See* Dep. of Ray Hannah 87:5-88:13, ECF No. 53-6 (responding "no" to question whether he told Mr. El or his secretary why he wanted to meet). Plaintiff has thus not produced evidence that Mr. El knew of his age discrimination complaints and attempted to influence the CRC's decision based on a retaliatory motive. Nor is there evidence that Mr. Montanes or Mr. Singer had any influence on the CRC's decision.

The record in Plaintiff's favor shows, however, that Mr. Lucero was aware of the complaints and attended the CRC meeting on Mr. El's behalf. Defendant, however, submitted evidence that Mr. Lucero had no role in drafting Mr. El's recommendation, was not consulted by Mr. El regarding the recommendation, and was asked to leave during the deliberations of the CRC. *See* Dep. of James Lucero 35:1-5, ECF No. 43-2 at 25 of 25. The evidence does not support a reasonable inference that Mr. Lucero harbored retaliatory animus based on the age-discrimination complaints. Nor has Plaintiff produced evidence that the CRC uncritically relied on facts provided by Mr. Lucero, rather than the independent investigation of Ms. Renfro. *Cf. Macon*, 743 F.3d at 715 (holding that there was no triable issue of retaliatory motive or pretext because review panel assessed plaintiff's alleged misconduct and made decision to fire plaintiff,

and plaintiff had not shown how any retaliatory motive on the part of his supervisors could be imputed to employer when final decision was made by grievance panel and there was no allegation grievance panel was biased, had retaliatory motive, or rubber-stamped supervisor's decision to fire him); *Lobato v. New Mexico Environment Dept.*, 733 F.3d 1283, 1295 (10th Cir. 2013) ("[A]n employer is not liable under a subordinate bias theory if the employer did not rely on any facts from the biased subordinate in ultimately deciding to take an adverse employment action—even if the biased subordinate first alerted the employer to the plaintiff's misconduct.").

Furthermore, Defendant has met its burden of production of establishing a legitimate, non-discriminatory reason for terminating Mr. Hannah's employment. The burden then shifted to Plaintiff to produce evidence the discharge was pretext for the unlawful retaliation. *Webb*, 167 F. App'x at 733. To overcome the fact that Sandia vested its employment decision on a neutral independent review committee unaware of Mr. Hannah's age discrimination complaints, Plaintiff must produce evidence that the CRC imposed discipline by merely relying on reports or conclusions of the biased supervisor, rather than conducting an independent investigation. *See Macon*, 743 F.3d at 715. The undisputed evidence, however, is that Sandia used Ms. Renfro to conduct an independent investigation of the incident, upon which the CRC relied. Defendant is therefore entitled to summary judgment on Count II. *See Lobato*, 733 F.3d at 1294 ("if the employer independently verifies the facts and does not rely on the biased source—then there is no subordinate bias liability").

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**ECF No. 43**) is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.


_____
**UNITED STATES DISTRICT JUDGE**